IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD W. McCABE, | ) |
| Petitioner, | ) Civil Action No. 09 - 109E ) |
| v. | ) District Judge Sean J. McLaughlin ) Magistrate Judge Susan Paradise Baxter ) |
| FRANCISCO J. QUINTANA, | ) ) |
| Respondent. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied.

**II.   REPORT**

Petitioner, Edward W. McCabe, Jr., has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 claiming that he is in custody in violation of federal law because the federal Bureau of Prisons (BOP) calculated his sentences incorrectly. For the reasons set forth below, the Petition should be denied.

**A. Undisputed Relevant Factual and Procedural History**

The record evidence reflects the following facts. On November 23, 2004, Petitioner pleaded guilty in the Supreme Court of New York to Third Degree Criminal Sale of a Controlled Substance (Case No. 46485C-2004). On June 16, 2005, Petitioner was arrested by New York City police and charged with Third Degree Criminal Sale of a Controlled Substance (Case No. 32184C-2005); he was released on bond that same date. On September 1, 2005, Petitioner was sentenced to from two to six years imprisonment in Case Number 46485C-2004 and to a concurrent two year sentence in Case Number 32184C-2005. Petitioner's New York sentences commenced on October 4, 2005, the

date of his commitment to a state institution. He received 105 days jail time credit for time served from June 21, 2005 through October 3, 2005.

On August 14, 2006, a criminal information was filed in the United States District Court for the Southern District of New York charging Petitioner with Conspiracy to Distribute Heroin in violation of 21 U.S.C. § 846 between September 2004 through June 2005. On October 25, 2006, Petitioner pleaded guilty to this offense and on January 19, 2007, he was sentenced to a term of 60 months imprisonment, to run concurrently with the New York State sentence he currently was serving. The sentencing court recommended that Petitioner be designated to a facility closest to the New York metropolitan area, that he participate in the BOP Drug and Alcohol Treatment Program, and that he receive credit against his federal sentence from January 12, 2006 forward.

On June 19, 2007, Petitioner was paroled by state authorities and released into federal custody to serve his federal sentence. Petitioner's 60-month federal sentence was computed as commencing on January 19, 2007, the date that it was imposed. He received one day prior custody credit pursuant to 18 U.S.C. § 3585(b) for time served on June 16, 2005, that was not credited against his state sentence. Also, he received 73 days qualified non-federal pre-sentence credit against his federal sentence for time served in official detention on June 16, 2005, and from June 21, 2005 through August 31, 2005. Assuming he receives all good conduct time available to him under 18 U.S.C. § 3624(b), Petitioner's projected release date is March 16, 2011.

On September 14, 2008, Petitioner wrote a letter to the federal sentencing court complaining that BOP refused to begin commencement of his federal sentence in January of 2006 as ordered during Petitioner's sentencing hearing (ECF No. 13-1, p. 17). On November 4, 2008, the federal sentencing court issued an Order denying Petitioner's request stating that any time served from

January 12, 2006 through January 19, 2007 did not qualify as prior custody credit under 18 U.S.C. § 3585(b) because he was receiving credit towards his state sentence during that period (ECF No. 13-1, p. 20).

### B. Federal Sentence Calculation

The first bedrock principle that must be recognized in this case is that where an individual has committed crimes against two sovereigns, the issue of jurisdiction over him is a matter of comity between the two sovereigns. Ponzi v. Fessenden, 258 U.S. 254, 262 (1922). As to the federal government, the authority to exercise this comity rests with the Attorney General, and an individual may not complain about his decisions. *See* Poland v. Stewart, 117 F.3d 1094, 1098 (9th Cir.1997) ("It is the Attorney General's job to exercise the authority of the United States over federal prisoners. If she chooses to leave [an individual] in the custody of the State ..., neither [the individual] nor this court is in a position to say she lacks the authority under the Constitution to do so."); Bowman v. Wilson, 672 F.2d 1145, 1154 (3d Cir. 1982) (" '[t]he exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner.' ") (quoting Derengowski v. United States, 377 F.2d 223, 224 (8th Cir.1967)) (alteration by quoting court). A corollary to this principle is that a determination as to concurrence of sentence made by one sovereign does not bind the other. A prisoner may not, by agreeing with the state authorities to make his sentence concurrent with a federal sentence, " 'compel the federal government to grant a concurrent sentence.' " Pinaud v. James, 851 F.2d 27, 30 (2d Cir. 1988) (quoting United States v. Sackinger, 704 F.2d 29, 32 (2d Cir.1983)).

The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. *See* Ponzi v. Fessenden, 258 U.S. 254 (1922). *See also* Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.), *aff'd*, 100 F.3d 946 (3d Cir. 1996). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. *See, e.g.*, Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, *e.g.*, bail release, dismissal of the state charges, parole release, or expiration of the sentence." Chambers, 920 F. Supp. at 622 (citations omitted). Producing a state prisoner under writ of *habeas corpus ad prosequendum* to answer federal charges does not relinquish state custody. Thomas v. Brewer, 923 F.2d 1361, 1366-67 (9th Cir. 1991); Salley v. United States, 786 F.2d 546, 547-48 (2d Cir.1986) (defendant produced and sentenced in federal court via writ of *habeas corpus ad prosequendum* did not begin to serve consecutive federal sentence until delivered into federal custody).

The Attorney General, through the Bureau of Prisons (BOP)[1], has responsibility for imprisoning federal offenders. *See* 18 U.S.C. § 3621(a). *See also* United States v. Wilson, 503 U.S. 329, 333 (1992); United States v. Ifeoluwa, 238 Fed. App'x 895, 900 (3d Cir. 2007). The

---

1. The BOP's policies regarding sentence computation are set forth in Program Statement 5880.28, Sentence Computation Manual (PS 5880.28), which is available in full on its website, www.bop.gov.

interpretation of a statute by the agency charged with administering it is entitled to some deference, so long as its interpretation is not clearly erroneous or contrary to law or the constitution. Reno v. Koray, 515 U.S. 50, 60 (1995). Thus, the standard of review of the BOP's actions in crediting Petitioner's federal sentences is limited to determining whether the BOP abused its discretion. Espinoza v. Sabol, 558 F.3d 83, (1st Cir. 2009) ("Most circuits consider that the district court's review of a BOP decision about credits is for abuse of discretion."). Moreover, the BOP is presumed to follow the law and so it is Petitioner's burden to show that the BOP abused its discretion in calculating Petitioner's sentences. *See, e.g.*, Garner v. Jones, 529 U.S. 244, 256 (2000) ("we presume the Board [of Pardons and Paroles of Georgia] follows its statutory commands and internal policies in fulfilling its obligations."); United States v. Aviles, 623 F.2d 1192, 1198 (7th Cir. 1980) ("the presumption of regularity attends official acts of public officers and the courts presume that their official duties have been discharged properly.").

A federal prisoner's sentence calculation is governed by 18 U.S.C. § 3585, Calculation of a term of imprisonment. Paragraph (a) of the statute governs the date upon which a prisoner's sentence commences, and paragraph (b) governs credit he receives for time he spent in official detention prior to the date his sentence commenced. Thus, in any computation of a federal sentence, two separate decisions must be made: (1) when the federal sentence commences and (2) to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence. Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.), *aff'd*, 100 F.3d 946 (3d Cir. 1996). *See also* Dutton v. U.S. Attorney General, __ F.Supp.2d __, __, 2010 WL 2000370, at *3 (W.D.N.Y., May 20, 2010).

1.      Commencement of a Federal Sentence

The date upon which a federal sentence commences is controlled by 18 U.S.C. § 3585(a), which provides as follows:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP has interpreted § 3585(a) such that it will not commence a federal sentence earlier than the date on which it was imposed. *See* PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). *See also* Rashid v. Quintana, 372 Fed. App'x 260, 262 (3d Cir. 2010) ("A federal sentence commences when the defendant is received by the Attorney General for service of his federal sentence. *See* 18 U.S.C. § 3585(a). *See also* United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir. 1990). As a result, a federal sentence cannot begin to run earlier than on the date on which it is imposed."); DeMartino v. Thompson, Civil No. 96-6322, 1997 WL 362260 at *2 (10th Cir. July 1, 1997) ("Logically, a [federal sentence] cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). Thus, a federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served. Rashid, 372 Fed. App'x at 2, n.7; Peterson v. Marberry, Docket Civil No. 07-56, 2009 WL 55913 at *3-5 (W.D. Pa. Jan.5, 2009) (citing PS 5880.28, Chapt. 1, Pages 12-13, and explaining in detail BOP policies regarding § 3585(a)).

A threshold issue in determining the commencement date of a Federal sentence is whether the defendant was in primary Federal or primary non-Federal custody at the time the Federal

sentence was imposed. If the defendant was in primary Federal custody, the Federal sentence will commence upon imposition. If, however, the defendant was in primary State or other non-Federal custody at the time the Federal sentence was imposed, the BOP must determine whether the federal sentencing court expressly indicated an intent as to whether the federal sentence should run concurrently or consecutively with the non-federal sentence. If the Federal court expressly indicated an intention to have its sentence run concurrently with the non-Federal sentence, the Federal sentence will be deemed to commence upon imposition.[2] Thus, a federal sentence made concurrent with a sentence already being served does not operate in a "fully concurrent" manner; rather, the second sentence runs together with the remainder of the one then being served. *See* Shelvy v. Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983); Mills v. Quintana, Civil No. 08-339 Erie, 2010 WL 2636073, 4 (W.D. Pa. June 28, 2010). Consequently, a concurrent federal sentence commences on the date of its imposition, and not on the date of commencement of the prior undischarged sentence or some earlier date.

In this case, the federal sentencing court ordered that its 60-month sentence was to run concurrently with the two to six year sentence imposed by the state court. Thus, BOP properly commenced Petitioner's federal sentence on the date it was imposed, January 19, 2007.

Petitioner argues that the federal sentencing court intended to adjust its federal sentence to commence on January 12, 2006. In making this claim, he relies on the opinion by the Court of Appeals for the Third Circuit in Ruggiano v. Reish, 307 F.3d 121, 126 (3d Cir. 2002). In Ruggiano,

---

2. If the Federal sentencing court was silent as to whether it intended its sentence to run concurrently, the court's silence will be construed as an intent to impose a consecutive sentence. In such cases, the Federal sentence will commence only when primary non-Federal custody over the defendant is relinquished.

the Court held that in imposing a sentence, a district court may grant an adjustment for time served on a preexisting sentence pursuant to United States Sentencing Guidelines (U.S.S.G.) § 5G1.3(c) by making the federal sentence concurrent with the state sentence for the full period of the preexisting sentence (retroactively concurrent) or only concurrent for the remainder of the preexisting sentence from the date when the federal sentence was imposed.[3] In Ruggiano, the sentencing judge stated "that he thought it appropriate to go ahead and recommend that [Ruggiano's sentence] be served concurrently and that he receive credit for the amount of time that he served there." *Id.*, 307 F.3d at 124. "Then, in his written judgment, [the sentencing judge] recited that Ruggiano's sentence was to 'run concurrent with State sentence. Defendant to receive credit for time served.' " *Id*. The Third Circuit found that this language conveyed an intent of the sentencing judge to grant an adjustment by making the federal sentence retroactively concurrent for the entire period of the state sentence pursuant to § 5G1.3(c). In making this determination, the Court noted that imposing a concurrent sentence retroactively to coincide with time served on a pre-existing sentence is properly termed an "adjustment," and not a "credit" or "downward departure." *Id*. at 133.

---

3. U.S.S.G. section 5G1.3 is entitled "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment," and is intended to aid the Court in determining an appropriate term of imprisonment when a defendant is also subject to an undischarged term of imprisonment. This guideline provides in relevant part as follows.

> (c) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(c)

In 2003, an amendment to the 5G1.3 Application Notes provided that subsection (c) does not authorize a sentencing court to make an adjustment for time served on a prior undischarged term of imprisonment and that a sentencing court may consider a downward departure only in extraordinary cases.

> (E) Downward Departure.--Unlike subsection (b), subsection (c) does not authorize an adjustment of the sentence for the instant offense for a period of imprisonment already served on the undischarged term of imprisonment. However, in an extraordinary case involving an undischarged term of imprisonment under subsection (c), it may be appropriate for the court to downwardly depart. This may occur, for example, in a case in which the defendant has served a very substantial period of imprisonment on an undischarged term of imprisonment that resulted from conduct only partially within the relevant conduct for the instant offense. In such a case, a downward departure may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings. Nevertheless, it is intended that a departure pursuant to this application note result in a sentence that ensures a reasonable incremental punishment for the instant offense of conviction.
>
> To avoid confusion with the Bureau of Prisons' exclusive authority provided under 18 U.S.C. 3585(b) to grant credit for time served under certain circumstances, the Commission recommends that any downward departure under this application note be clearly stated on the Judgment in a Criminal Case Order as a downward departure pursuant to § 5G1.3(c), rather than as a credit for time served.

U.S. Sentencing Guidelines Manual § 5G1.3 app. note 3(E). This amendment became effective November 1, 2003, before Petitioner was sentenced on his federal conviction.[4]

---

4. In several subsequent opinions, the Court of Appeals for the Third Circuit has held that Ruggiano has been abrogated by the 2003 Amendment to Application Note 3(E). *See, e.g.*, Escribano v. Schultz, 330 Fed. App'x 21, 23 (3d Cir. 2009); United States v. Destio, 153 Fed. App'x 888 (3d Cir. 2005).

The Historical Notes to the Sentencing Guidelines reveal that Application Note (3)(E) was proposed to address a conflict among the various Courts of Appeals regarding the authority of sentencing courts to grant credit or adjust a sentence for time served on a prior undischarged term of imprisonment under § 5G1.3(c). The Historical Note explained that the 2003 amendment made clear that courts may not adjust or give "credit" for time served on an undischarged term of imprisonment under 5G1.3(c). Instead, courts may downwardly depart in extraordinary cases in extraordinary circumstances in order to achieve reasonable punishment for the instant offense.

Thus, in order to apply § 5G1.3 to the instant action, the judgment in Petitioner's criminal case order must clearly provide for a downward departure pursuant to § 5G1.3(c) rather than a credit for time served. However, neither the Judgment and Commitment Order, the SOR or the sentencing transcripts reflect an intent to apply § 5G1.3(c). While the sentencing transcripts and the Judgment and Commitment Order indicate that the court recommended to the BOP that Petitioner receive credit against his federal sentence for time served from January 12, 2006; because this recommendation is contrary to 18 U.S.C. § 3585(b), the BOP could not follow this particular recommendation. Moreover, upon learning that the BOP could not follow his recommendation that Petitioner receive prior custody credit from January 12, 2006, Judge Pauley declined to apply a downward departure under U.S.S.G. § 5G1.3(c) in his Order denying Petitioner's "motion" for credit for the time served against the undischarged New York state sentence (ECF No. 13-1, p. 20).

Finally, to the extent that the Petition can be interpreted as arguing that the court applied a downward departure pursuant to § 5G1.3(c), such an argument lacks merit because by signing the plea agreement, Petitioner agreed that neither a downward nor an upward departure from the stipulated Guidelines Range was warranted. The Plea Agreement specifically provides:

10

"[a]ccordingly, neither party will seek such a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Probation Department consider such a departure or adjustment, or suggest that the court sua sponte consider such a departure or adjustment." ECF No. 13-2, pp. 3-4. Thus, the evidence fails to support Petitioner's argument that by imposing a concurrent sentence or by recommending Petitioner receive prior custody credit from January 12, 2006, the federal sentencing court was also intending to downwardly depart from the applicable sentencing guideline range under § 5G1.3. Thus, Petitioner's reliance on Ruggiano affords him no basis for federal habeas relief.

2.  Prior Custody Credit

The second calculation in arriving at Petitioner's projected release date is whether he is entitled to any prior custody credit. Prior custody credit is governed by 18 U.S.C. § 3585(b), which provides as follows.

> (b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> That has not been credited against another sentence.

18 U.S.C. § 3585(b). The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, the BOP may not grant prior custody credit under § 3585(b) for time that has been credited against

another sentence. Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001)[5]; United States v. Vega, 493 F.3d 310, 314 (3d Cir. 2007); Chambers, 920 F.Supp. at 623 ("Section 3585 does not permit credit on a federal sentence for time served and credited against another sentence.").

Here, Petitioner was arrested by New York authorities and released on bond on June 16, 2005. He was arrested again by New York authorities on June 21, 2005 and held in continuous custody thereafter. Under U.S.C. § 3585(b), Petitioner received one day of federal prior custody credit for June 16, 2005, because this day was not credited against his state sentence. However, all of the time that he was detained between June 21, 2005 and January 18, 2007 was credited against his state sentence. Thus, under 18 U.S.C. § 3585(b), he can not receive any credit to his federal sentence for this time period.

Notwithstanding, under case law interpreting 18 U.S.C. § 3585(b), there are two limited exceptions to the rule prohibiting double credit: Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993) and Willis v. United States, 438 F.2d 923 (5th Cir. 1971). The Kayfez and Willis exceptions to the general rule prohibiting double crediting are referred to as "qualified non-federal pre-sentence credits." *See* BOP Program Statement 5880.28, Sentence Computation Manual, at pp. 1-14,1-20, 1-22, 1-23.

3. Qualified Non-Federal Pre-sentence Credits

In Kayfez, the Court held that a limited amount of double credit may be granted if the following conditions are present: (1) the non-federal and federal sentences are concurrent; (2) the

---

5. Rios was superseded by statute on unrelated grounds to the extent that the court applied a version of the United States Sentencing Guidelines § 5G1.3 prior to its amendment, effective November 1, 1995. *See* United States v. Saintville, 218 F.3d 246, 247 (3d Cir. 2000).

raw effective full term (EFT)[6] date of the non-federal term is later than the raw EFT of the federal term,3 and (3) the non-federal raw EFT, after application of qualified non-federal pre-sentence time[7], is reduced to a date that is earlier than the federal raw EFT date. In Willis, the Court held that limited amount of non-federal pre-sentence credit may be granted if the following conditions are present: (1) the non-federal and the federal sentences are concurrent; and (2) the non-federal raw EFT is either the same or earlier than the federal raw EFT.

The BOP determined that Petitioner did not qualify for Kayfez credit because the federal raw EFT (January 19, 2012) is later than the state EFT (September 1, 2011). Notwithstanding, the BOP did determine that Petitioner qualified for Willis credit. Under Willis, an inmate may receive qualified non-federal pre-sentence credit for time in official detention on or after the date of his federal offense conduct until the day before the first sentence is imposed (ECF No. 13-1, p. 25). Thus, pursuant to Willis, Petitioner received qualified non-federal pre-sentence credit for June 16, 2005 (one day), and for the 72 days between June 21, 2005 (the date he was arrested by New York City Police Officers) through August 31, 2005 (the day before the first sentence was imposed).

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas be denied.

---

6. The raw EFT is the full term date of a sentence without reference to prior custody credit or good conduct time. It is determined by adding the length of the sentence imposed to the commencement date of the sentence. PS 5880.28, Chapt. 1 at page 14.

7. Qualified non-federal presentence time is the number of days between the date of nonfederal arrest and the date the first sentence (whether federal or non-federal) commences. *See* PS 5880.28, Chapt. 1 at page 23.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Petitioner is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights. *See* <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
Susan Paradise Baxter
United States Magistrate Judge

Dated: February 10, 2011

cc: Edward W. McCabe
3145 Country Club Road
Bronx, NY 10465